**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| PATRICK ROJAS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC., a California Corporation, and HONDA NORTH AMERICA, INC., a California Corporation,<br><br>    Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Patrick Rojas, individually and on behalf of all others similarly situated, alleges as follows based on personal knowledge as to himself, on the investigation of his counsel, and on information and belief as to all other matters:

## NATURE OF ACTION

1.      Plaintiff brings this Class Action Complaint against American Honda Motor Co., Inc., Honda North America, Inc., and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other entities (collectively, "Honda" or "Defendants"), for damages and equitable relief.

2.      One of the most basic safety features in every car in its implementation of a system that allows the driver to easily take the vehicle out of gear and place the vehicle in "Park," with the knowledge and confidence that their vehicle will not inadvertently roll away after the driver exits the vehicle.

3.      Honda broke this minimum safety standard obligation. Its 2016, 2017 and, upon information and belief, its 2018 Honda Civic vehicles equipped with CVT transmissions ("Class Vehicles") have a common defect such that their drivers are unable to determine whether the Class Vehicles are properly placed in "Park" before exiting the vehicles. The Class Vehicles fail to

1

provide notice to drivers that their Vehicle is out-of-gear, they fail to automatically activate the Electric Parking Brake in certain situations (such as when the driver exits the vehicle or when the driver's door is opened), and they are prone to—and actually do—unintentionally roll away (the "Rollaway Defect"), often causing crashes or injuries.

4.     The Defective Shifter's sole reliance on visual feedback to convey gear selection has been dangerous and ineffective. Complaints on NHSTA and online indicate that Class Vehicle owners and lessees are unable to determine whether the vehicle is put into the desired gear, resulting in a multitude of rollaways, accidents, and injuries.

5.     Honda recalled approximately 350,000 2016 Honda Civic Models with the defect at issue here.[1]  Specifically, the recall was initiated because "if the EPB (electric parking brake) isn't properly set and a parking gear is not selected by the driver, the vehicle could potentially roll away, increasing risk of a crash."[2]

6.     Honda attempted to fix the Rollaway Defect in its 2016 model year (MY) Class Vehicles via a software update to the Vehicle Stability Assist system such that the Electronic Parking Brake would—or at least should—engage when the vehicle is parked and before the driver leaves the car. Upon information and belief, however, this software update did not resolve or repair the Rollaway Defect.

**WARRANTY CLAIM INFORMATION**

| Operation Number | Description | Flat Rate Time | Defect Code | Symptom Code | Template ID | Failed Part Number |
|---|---|---|---|---|---|---|
| 4135A6 | Update the VSA modulator control unit and do the VSA sensor neutral position memorization, TPMS calibration, and clutch pedal stroke sensor zero point (if applicable), then clear any stored DTCs | 0.4 hr | 6EP00 | KC600 | 16-090A | 57100-TBA-A14 |

---

[1] http://www.autoguide.com/auto-news/2016/10/2016-honda-civic-recalled-for-electric-parking-brake-issue.html.

[2] *Id.*

7.      Despite the 2016 MY recall, Honda manufactured, marketed, and sold its substantially similar—virtually identical—2017 MY, and is or will be selling its 2018 MY Civic Class Vehicles in the same defective condition with the same Rollaway Defect.

8.      Despite the 2016 MY recall, Honda manufactured, marketed, and sold its substantially similar—virtually identical—2017 MY, and is or will be selling its 2018 MY Civic Class Vehicles in the same defective condition with the same Rollaway Defect.

9.      Since and despite its 2016 MY Class Vehicle recall, Honda has received consumer complaints and reports of accidents regarding the Rollaway Defect in Class Vehicles, including through the National Highway Traffic Safety Administration ("NHTSA"). To-date, Honda has not recalled any 2017 MY Class Vehicles for the Rollaway Defect.

10.     Honda's failure to fix the Rollaway Defect, despite its knowledge of the problem, caused Plaintiff Patrick Rojas ("Plaintiff") and other owners of Class Vehicles ("Class Members") to suffer damages and be placed at risk due to this serious safety issue.

11.     Upon information and belief, nearly a million Class Vehicles with the Rollaway Defect remain in use by unsuspecting owners. As a result of the Rollaway Defect, the Class Vehicles are a hazard to their owners and the public.

12.     Plaintiff, on behalf of himself and similarly situated Class Members, seeks damages for Honda's conduct with regard to the Rollaway Defect as alleged in this complaint.  Plaintiff would not have purchased his Class Vehicle, or would have paid less for it than he did, had he been advised of the Rollaway Defect at the point of sale. Plaintiff and the putative Class Members did not receive the benefit of their bargain.

### JURISDICTION AND VENUE

13.     The Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because there are more than 100 Members of the proposed Class, because the claims of the putative class Members exceed $5 million in the aggregate, exclusive of interest and costs, and because at least one of the Members of the proposed Class is a citizen of a different state than Honda.

14.     The Court can exercise personal jurisdiction over Defendants because Defendants' actions summarized in this complaint occurred in this District so as to subject them to *in personam* jurisdiction in this District.

15.     This Court can exercise personal jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

16.     Venue is proper in this District under 28 U.S.C. 1391 (a)-(c) because Plaintiff Rojas obtained his vehicle from a Honda branch located in a county within this District. Additionally, Defendants distribute Class Vehicles in this District and receive substantial compensation and profits from the sale and lease of Class Vehicles in this District.

**<u>PARTIES</u>**

17.     Plaintiff Patrick Rojas is currently a resident and citizen of Milpitas (Santa Clara County), California. Prior to March 7, 2019, Plaintiff Rojas was a resident and citizen of North Miami (Miami-Dade County), Florida. Plaintiff Rojas purchased a 2016 Honda Civic EXT from Honda of Aventura in North Miami Beach, Florida in July 2016. At all times relevant, Plaintiff Rojas was a resident and citizen of the State of Florida.

18.     Defendant American Honda Motor Co., Inc. ("AHM") is a corporation organized under the laws of the State of California and has its principal place of business in Torrance, California. AHM operates, maintains offices, and/or conducts business in all fifty states.

19.     Defendant Honda North America, Inc. is a corporation organized under the laws of the State of California and has its principal place of business in Torrance, California.

20.     Defendants (collectively referred to as "Honda") are the developers, designers, manufacturers, assemblers, testers, inspectors, marketers, advertisers, distributors, sellers, and/or warrantors of the Class Vehicles.

## **FACTUAL ALLEGATIONS**

I.     **Plaintiff Patrick Rojas**

21.     On or about June 14, 2016, Plaintiff Patrick Rojas purchased a 2016 Honda Civic Ext, VIN 19XFC1F35GE029374, from Honda of Aventura, located at 2150 NE 163rd Street, North Miami Beach, Florida, 33162. Plaintiff Rojas paid approximately $23,500 for his Class Vehicle.

22.     At the time Plaintiff Rojas purchased his vehicle, he lived in North Miami, Florida. At all times relevant, Plaintiff Rojas was a resident and citizen of the State of Florida.

23.     At the time Plaintiff Rojas purchased his vehicle, Honda knew that the Rollaway Defect could lead to vehicle rollaway incidents but did not disclose this defect to Plaintiff Rojas. Plaintiff Rojas purchased—then operated—the vehicle on the reasonable but mistaken belief that her Class Vehicle was safe to operate as designed.

24.     In or around October 7, 2018, Plaintiff Rojas drove his Class Vehicle to Miami Dade Community College to attend a class he was enrolled in. Plaintiff Rojas drove into the parking lot on campus and parked his vehicle into a parking spot. Upon returning from class, Plaintiff Rojas' Class Vehicle had rolled approximately 20 feet from the parking spot in which it was originally situated and rolled into a parked truck. Plaintiff Rojas' vehicle suffered a large dent over the front left wheel (pictured below).



25.     Plaintiff Rojas was completely unaware as to why his Class Vehicle would roll away on its own despite being shifted into park.

26.     On November 29, 2018, Plaintiff Rojas took his Class Vehicle in for an inspection at Honda of Aventura. At Honda of Aventura, Plaintiff Rojas described the incident in which his Class Vehicle rolled approximately 20 feet on its own and hit another vehicle in a parking lot. Plaintiff Rojas told them how concerned he was about this incident given the damage caused to his vehicle and the fact that his car was only two and a half years old. Technicians at Honda of Aventura told Plaintiff Rojas they weren't aware of that happening with other vehicles and that an "update may fix it". Thereafter, a software update was done to Plaintiff Rojas' Class Vehicle. Plaintiff Rojas was not charged for the software update to his Class Vehicle.

27.     To date, Plaintiff Rojas is afraid his Class Vehicle may roll away on its own again and cause damage to his vehicle and another vehicle. Plaintiff Rojas refuses to park in crowded parking lots in an effort to avoid having his Class Vehicle potentially roll into another vehicle and cause damage to his Class Vehicle.

28.     Neither Honda nor any of its agents, dealers, or representatives informed Plaintiff Rojas of the Rollaway Defect prior to leasing her vehicle or after the vehicle's Rollaway Defect manifested.

29.     Had Plaintiff Rojas been advised of the Rollaway Defect at or before leasing, he would not have purchased his vehicle or he would have paid less to lease the vehicle than he did. He did not receive the benefit of his bargain.

**II.     Honda Knew That The Shifter Was Defective And Unreasonably Dangerous**

30.     Since 2016, complaints to NHSTA and through its online reporting, as well as other online forums indicate that Class Vehicle owners and lessees are unable to determine whether the vehicle in the desired gear, which has resulted in a multitude of rollaways, accidents, and injuries.

31.     Upon reasonable inspection and testing of the Class Vehicles and each of their components, Honda knew or should have known the Class Vehicles were prone to the Rollaway Defect.

32.     Honda knew or should have known of the Rollaway Defect, but failed to take reasonable corrective steps to prevent or cure the Defect.

33.     Honda had sufficient knowledge, expertise, availability, and resources to inspect the Class Vehicles for defects prior to placing them on the market.

34.     Honda had a duty to reasonably inspect the Class Vehicles for defects prior to placing them on the market.

35.     Honda failed properly to inspect and confirm the safety of the Class Vehicles before their entry into the stream of commerce and before their sale to unsuspecting consumers.

36.     Honda failed to complete reasonable tests and inspections of the Class Vehicles, which would have revealed the Rollaway Defect.

37.     The shifter cannot and does not perform as intended, because neither Honda, nor any reasonable car designer, would design a gear shifter that only shifts into the intended gear some of the time, or randomly shifts to gears other than the one selected. Honda has provided no information to buyers or lessees to inform them that the shifters within the Class Vehicles are unreliable (*i.e.* that the vehicles have the Rollaway Defect).

38.     Upon information and belief, Honda's knowledge about the problems with the shifter as described in this complaint is reflected in: its internal communications, including memoranda and e-mails related to the Rollaway Defect; reports of other incidents—including those compiled in the NHTSA database, which Honda regularly reviews—involving Honda's vehicles with this defective shifter design; Honda's compilations and analyses of crash data; and the tests conducted by Honda and others, including but not limited to failure mode and effects analyses (FMEA), human factors simulations, pre-release vehicle evaluation tests, computer simulations, and cost/benefit analyses.

39.     Despite knowledge of the Rollaway Defect, Honda failed to warn Class Members of the Defect. Specifically, none of the Class Members received a warning that the gear shifter in their Class Vehicles may not perform properly and as warranted, or that as a result drivers may experience a rollaway or similar occurrence due to the Rollaway Defect.

40.     Honda, through its own research and development, would have known that reasonable alternative designs are available to prevent rollaway incidents like those involving this shifter design. Such alternative designs of electronic shifters, which include safeguards like automatically putting the vehicle in park when the driver's door opens or when the ignition is turned off, prevent rollaways and are used by other manufacturers, including but not limited to BMW.

### III.     Reports To NHTSA Recount Incidents Of Vehicle Rollaway

41.     NHTSA has received reports of rollaway incidents involving the Class Vehicles, including the reports copied verbatim below:

> NHSTA Complaint on March 6, 2019 for 2018 Civic: 2018 HONDA CIVIC PARKED ON AN INCLINE. AFTER EXITING THE VEHICLE AND GOING INSIDE HOME, SPONTANEOUSLY ROLLED DOWN HILL AND CRASHED INTO A TREE. THE VEHICLE WAS IN PARK AND DID NOT ROLL IMMEDIATELY. THIS HAPPEN SOMETIME AFTER ENTERING THE RESIDENCE. IN RESEARCHING ONLINE I HAVE FOUND THIS HAS OCCURED WITH SEVERAL OTHER OWNERS AND HAS BEEN REPORTED TO THE HONDA CORPORATION SINCE 2016. 2016-2018 HONDA CIVICS SEEM TO BE THE VEHICLE MODELS/YEARS AFFECTED.

> NHSTA Complaint on September 27, 2018 for 2016 Civic: MY 2016 HONDA CIVIC ROLLED OUT OF MY GARAGE WHILE IT WAS IN PARK. MY DAUGHTER HAD JUST GOTTEN HOME. SHE INITIALLY TURNED THE CAR OFF IN DRIVE. SHE REALIZED THAT IT WAS STILL IN DRIVE AND SHIFTED TO PARK AND RESTARTED THE CAR. THE CAR ROLLED OUT OF THE GARAGE WHILE STILL IN PARK. MY DAUGHTER ATTEMPTED TO EXIT THE CAR, WAS KNOCKED DOWN AND RAN OVER BY THE RUNAWAY VEHICLE. SHE WAS INJURED BY THIS ACCIDENT. THE CAR HIT A TREE ACROSS THE STREET FROM MY HOUSE. I FOUND A SPRING IN THE GARAGE FLOOR THAT I THOUGHT BELONG TO THE CAR. I CONTACTED AMERICA HONDA AND TOOK THE CAR TO THE DEALER. THEY WERE UNABLE TO DUPLICATE THIS INCIDENT. THEY SAID THERE WAS NOTHING WRONG WITH THE CAR. I RESEARCHED ON THE

INTERNET AND FOUND OTHER SIMILAR INCIDENTS INVOLVING THE 2016 TO 2018 HONDA CIVIC. I MADE HONDA AWARE THAT THERE WAS A CLASS ACTION LAWSUIT FOR THIS SAME ISSUE ON THE INTERNET. THE ROLLING BACK IN PARK ISSUE HAD HAPPENED TWICE BEFORE TO ME.

NHSTA Complaint on April 9, 2018 for 2016 Civic: TL* THE CONTACT OWNS A 2016 HONDA CIVIC. WHILE THE VEHICLE WAS PARKED AND TURNED OFF, THE VEHICLE ROLLED BACKWARDS DOWN AN INCLINE INTO A PARKING LOT, AND CRASHED INTO ANOTHER VEHICLE. THE CONTACT CHECKED THE VEHICLE AND NOTICED THAT THE GEAR SHIFTER WAS IN THE DRIVE POSITION. THERE WERE NO INJURIES AND A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TOWED TO A LOCAL DEALER (GERMAIN HONDA OF ANN ARBOR, 2601 S STATE ST, ANN ARBOR, MI 48104) WHERE IT WAS DIAGNOSED THAT THE VEHICLE WAS WORKING AS INTENDED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS 30,473.

NHSTA Complaint on March 23, 2018 for 2017 Civic: THE VEHICLE WAS RUNNING AND IN PARK, UNOCCUPIED. VEHICLE ROLLED AWAY DESPITE TRANSMISSION BEING IN PARK POSITION AND STRUCK A GARAGE DOOR. OWNER STATES HE CONFIRMED VEHICLE WAS IN PARK WHEN HE CAME TO THE VEHICLE IN ITS FINAL RESTING POSITION. FOR ONE DAY PRIOR TO THIS OCCURANCE, A BRAKE ERROR MESSAGE HAD COME ON AND OFF IN THE VEHICLE. IT WAS A WEEKEND, SO THE OWNER DID NOT NOTIFY A SERVICE PROVIDER BUT WAS INTENDING TO SCHEDULE SERVICE ON THE MONDAY FOLLOWING. A CLAIM HAS BEEN FILED WITH HIS AUTO INSURANCE PROVIDER, ERIE INSURANCE, TO REPAIR THE BODY DAMAGE. UNDERLYING ISSUE NEEDS INVESTIGATION AS THERE IS NOT A RECALL FOR THIS SPECIFIC VIN, BUT A RECALL HAS BEEN ISSUED FOR A KNOWN PROBLEM FOR OTHER MAKES/MODELS.

NHSTA Complaint on November 21, 2017 for 2017 Civic: TL* THE CONTACT OWNS A 2017 HONDA CIVIC. WHILE THE VEHICLE WAS PARKED, IT ROLLED AWAY INDEPENDENTLY. THE FAILURE RECURRED TWICE. AS A RESULT, THE CONTACT INJURED HER FOOT AND REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TAKEN TO AUBURN HONDA (1801 GRASS VALLEY HWY, AUBURN, CA 95603), BUT THE CAUSE OF THE FAILURE WAS UNDETERMINED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 4,411.

NHSTA Complaint on April 24, 2017 for 2017 Civic: MY NEW CAR WILL LET YOU TURN OFF (PUSH BUTTON) AND GET OUT AND WALK AWAY

WHILE STILL BEING IN GEAR. I EXITED MY VEHICLE IN THIS SITUATION AND IT ROLLED DOWN THE DRIVE AND HIT A TREE. IT WAS 3 FEET FROM ROLLING INTO A HIGHWAY THAT COULD HAVE RESULTED IN SERIOUS INJURY OR DEATH. OLDER CARS YOU CANNOT REMOVE THE KEY. YOU SHOULD NOT BE ABLE TO TURN OFF THE CAR WITHOUT SOME OTHER SAFETY FEATURE TO KEEP THIS FROM HAPPENING.

NHSTA Complaint on August 11, 2017 for 2017 Civic: WHEN PULLING INTO A PARKING SPOT I PUT THE CAR INTO PARK BUT THE CAR KEPT MOVING FORWARD, OVER A SIDEWALK AND INTO A BUILDING. I PUT THE CAR IN REVERSE AND COULD NOT STOP THE CAR UNTIL IT HIT ANOTHER OBJECT. HAD DAMAGE TO THE FRONT BUMPER AND GRILL.

NHSTA Complaint on August 17, 2017 for 2017 Civic: I WAS TURNING INTO A PARKING LOT WHERE I THEN PROCEEDED TO PARK MY CAR INTO A PARKING SPOT. I PUT THE CAR IN PARK AND THE CAR CONTINUED TO MOVE FORWARD. THE CAR ENDED UP HITTING THE BUILDING THAT WAS 2 FEET IN FRONT OF ME. THE CAR THEN REVERSED ON IT'S OWN AND CHARGED FORWARD TO HIT THE BUILDING AGAIN. THE SECOND TIME IT HIT THE BUILDING THE AIR BAG WENT OFF. I TRIED TO PUT THE CAR IN REVERSE MANUALLY TO PREVENT IT FROM HITTING THE BUILDING. WHEN I DID THIS, THE CAR ACCELERATED BACKWARDS.

NHSTA Complaint on February 17, 2017 for 2016 Civic- THERE ARE THREE ISSUES WITH THIS 2016 HONDA CIVIC. HOWEVER ONE OF THESE ISSUES MUST BE ADDRESSED "IMMEDIATELY". WHEN YOU GO TO PARK YOUR CAR,(HAVING IT IN A STATIONARY POSITION) YOU PUSH THE PUSH BUTTON TO TURN IT OFF. HOWEVER IF YOUR VEHICLE IS STILL IN DRIVE WHEN YOU TURN IT OFF, IT "TURNS OFF" AND GIVES YOU A WARNING TONE. BUT!!!! IF YOUR HARD OF HEARING, AND YOU DON'T HEAR THIS TONE, YOU GO TO GET OUT OF YOUR VEHICLE AND IT EITHER ROLLS BACKWARDS (KNOCKING YOU DOWN WITH THE DOOR) AS IT ROLLS AWAY FROM YOU (AND HOPEFULLY NOT OVER YOU), "OR" IT ROLLS FORWARD, RUNNING COMPLETELY AWAY FROM YOU. THERE IS NO SAFETY FEATURE, SUCH AS THE ACURA. THE ACURA AUTOMATICALLY LOCKS YOUR CARS POSITION SO IT DOESN'T ROLL AWAY FROM YOU OR OVER YOU... MY BOYFRIEND HAS BEEN HURT TWICE DUE TO THIS UNSAFE FEATURE. AND I MYSELF HAVE BEEN SURPRISED BY IT ONCE. THIS CAR ONLY HAS 5,000 MILES ON IT. QUESTION IS? HOW MANY MORE MILES WILL IT BE ABLE TO ACCUMULATE BEFORE KILLING ONE OF US, OR SOMEONE ELSE? IF THERE WAS A WAY FOR ME TO SEND YOU A VIDEO OF THIS I WOULD. BUT I DO NOT KNOW HOW TO UPLOAD FROM MY PHONE.

NHSTA Complaint on December 12, 2016 for 2016 Civic-CAR ALLOWED ITSELF TO BE TURNED OFF WHILE STILL IN DRIVE. UPON LEAVING CAR IT ROLLED DOWN INCLINE INTO ANOTHER CAR. MY HUSBANDS HONDA (2011 CRV) DOES NOT ALLOW THE CAR TO TURNED OFF IN DRIVE NOR DOES IT ALLOW THE KEY TO BE REMOVED FROM THE IGNITION WHILE STILL IN GEAR/DRIVE. *TR

NHSTA Complaint on December 06, 2016, for 2016 Civic-TL* THE CONTACT OWNS A 2016 HONDA CIVIC. WHILE THE VEHICLE WAS PARKED WITH THE PARKING BRAKE APPLIED, IT ROLLED AWAY AND CRASHED INTO A HANDICAP PARKING POLE. THERE WERE NO INJURIES AND A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE APPLICATION OF THE ELECTRICAL CONTROL UNIT FAILED. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS INCLUDED IN NHTSA CAMPAIGN NUMBER: 16V725000 (PARKING BRAKE). THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 4,050. UPDATED 01/25/17*LJ

NHSTA Complaint on November 02, 2016, for 2016, Civic-THE ELECTRIC EMERGENCY BRAKE FAILED. THE CAR WAS PARKED, IGNITION TURNED OFF, EMERGENCY BRAKE APPLIED, AND LEFT THE VEHICLE. WHEN I RETURNED, THE CAR HAD ROLLED BACKWARDS DOWN A ROAD AND SLAMMED INTO ANOTHER PARKED CAR CAUSING DAMAGE TO BOTH VEHICLES. NO INJURIES RELATED TO THE ACCIDENT. POLICE REPORT IS NOT AVAILABLE YET. WE FOUND ABOUT THE RECALL THAT WAS ISSUED IN MID-OCTOBER BUT WE HAVE NOT BEEN NOTIFIED/CONTACTED YET.

NHSTA Complaint on October 14, 2016, for 2016, Civic-I PARKED MY 2016 HONDA CIVIC IN MY GARAGE AND SET THE PARKING BRAKE. I EXITED THE VEHICLE AND WALKED INTO THE HOUSE. THE VEHICLE MUST HAVE ROLLED OUT OF THE GARAGE (GARAGE SURFACE IS RATHER FLAT, PROBABLY WHY I DIDN'T SEE THIS HAPPEN) DOWN MY SLOPED DRIVEWAY ENDED UP IN THE NEIGHBORS YARD. VEHICLE SUSTAINED DAMAGE TO THE EXHAUST, BUMPER, UNDERSIDE OF TRUNK AND RIGHT REAR TIRE. THANK GOODNESS THAT NOBODY WAS INJURED. AT THE TIME I THOUGHT MAYBE I MADE A MISTAKE BUT NOW THAT HONDA HAS ISSUED A RECALL ON THE PARKING BRAKE I UNDERSTAND WHAT REALLY HAPPENED. I DID SET THE PARKING BRAKE BUT IT APPEARS THAT IT DID NOT EVER SET. I HAVE SINCE SEEN THIS HAPPEN AGAIN WHEN I HAVE PARKED ON OTHER SOMEWHAT FLAT SURFACES AND RETURNED TO MY VEHICLE AND IT

APPEARS AS THOUGH IT HAD MOVED A SMALL AMOUNT. WITH THE RELEASE OF DETAILS IN THE SAFETY RECALL (NHTSA CAMPAIGN NUMBER: 16V725000) I NOW UNDERSTAND MORE ABOUT WHAT HAPPENED.

## CLASS ACTION ALLEGATIONS

42.    <u>Class Definition</u>. Plaintiff brings this civil class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

43.    Plaintiff will seek certification of a nationwide class preliminarily defined as follows:

> All persons who purchased or leased a 2016 to 2018 MY Honda Civic equipped with a CVT Transmission in the United States (the "Class")

44.    Plaintiff will also seek certification of a Subclass defined as follows:

> A Florida Subclass consisting of: All persons who purchased or leased a 2016 to 2018 Honda Civic equipped with a CVT transmission in Florida (the "Florida Subclass")

45.    Excluded from the Class Florida Subclass are Honda, its parents, subsidiaries, affiliates, officers and directors, any entity in which Honda has controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family Members.

46.    Plaintiff reserve the right to modify or amend the definitions of the proposed Class and Florida Subclass before the Court determines whether certification is appropriate.

47.    *Numerosity and Ascertainability*. The Members of the Class and Florida Subclass are so numerous that joinder is impractical.  On information and belief, the Class and Florida Subclass are comprised of tens of thousands of Class Vehicle owners and lessees throughout the United States. Moreover, the Class and Florida Subclass are composed of an easily ascertainable, readily identifiable set of individuals and entities who purchased or leased Class Vehicles. The precise number of Class and Florida Subclass Members can be ascertained only through discovery, which includes Honda's network sales, service, and complaint records. The disposition of their

claims through a class action will benefit both the parties and this Court. Furthermore, Members of the Class and Florida Subclass may be identified from records maintained by Honda and its agents, and may be notified of the pendency of this action by mail, or other appropriate means, using a form of notice customarily used in consumer class actions.

48.     *Typicality*. The claims of the representative Plaintiff are typical of the claims of the Class and Florida Subclass, as such claims arise out of Honda's conduct in designing, manufacturing, warranting, and selling the Class Vehicles with the Rollaway Defect.

49.     *Adequate Representation*. Plaintiff will fairly and adequately protect the interests of Class Members and have no interests antagonistic to those of the Class or Florida Subclass. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of consumer class actions, including, but not limited to, consumer class actions involving, *inter alia*, breach of warranties, product liability, and product design defects.

50.     *Commonality*. There are numerous questions of law and fact common to the Class and Florida Subclass that will materially advance the litigation include, but are not limited to, the following:

a.     Whether Honda engaged in the conduct alleged herein;

b.     Whether the Class Vehicles contain a safety defect;

c.     Whether Honda knew about the Rollaway Defect and, if so, how long Honda has known of it;

d.     Whether Honda defectively designed or manufactured the Class Vehicles;

e.     Whether Plaintiff and Class Members were exposed to the same omissions of fact or misleading advertising regarding the Rollaway Defect;

f.     Whether Honda's conduct violates consumer protection statutes, false advertising laws, sales contracts, warranty laws, and other laws associated herein;

g.     Whether Plaintiff and Class Members overpaid for their Class Vehicles;

h.     Whether Plaintiff and Class Members are entitled to equitable relief, including,

but not limited to, restitution or injunctive relief, and

i.    Whether Plaintiff and Class Members are entitled to damages and other monetary relief and, if so, in what amount.

51.    *Predominance*. This class action is appropriate for certification because questions of law and fact common to Class and Florida Subclass Members predominate over questions affecting only individual Members.

52.    *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Requiring individual Class and Florida Subclass Members to bring separate actions would create a multiplicity of lawsuits burdening the court system and the risks of inconsistent rulings and of contradictory judgments. Alternatively, the diminution in value attributable to the defect may not be sufficient to economically justify individual litigation of these claims. Because the damages suffered by each Class and New Florida Member are relatively small compared to the expense and burden of prosecuting this compelling case against a well-financed, multibillion-dollar corporation, this class action is the only way each Class and Florida Subclass Member can redress the harm that Honda caused.

53.    This lawsuit is also maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that are generally applicable to the Class and Florida Subclass Members, thereby making final injunctive relief appropriate with respect to the Class and Florida Subclass.

## TOLLING OF STATUTES OF LIMITATIONS

54.    *Discovery Rule*. Plaintiff's claims accrued upon discovery that the shifter system that Honda designed, manufactured, and installed into the Class Vehicles suffered from the Rollaway Defect, and that the Rollaway Defect could not be repaired.  While Honda knew of and omitted the Rollaway Defect, Plaintiff, Class Members, and Florida Subclass Members could not and did not discover this fact through reasonable diligent investigation until after they experienced rollaway incidents, and reasonably excluded other potential causes of the failures.

55.     *Active Concealment Tolling*. Any statutes of limitations are tolled by Honda's knowing and active concealment of the Rollaway Defect.  Honda kept Plaintiff and all Class and Florida Subclass Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiff.  The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and the Class and Florida Subclass Members. Plaintiff and Class Members could not reasonably have discovered the Rollaway Defect.

56.     *Estoppel*. Honda was and is under a continuous duty to disclose to Plaintiff, as well as Class and Florida Subclass Members, the true character, quality, and nature of the Class Vehicles' shifter system. At all relevant times, and continuing to this day, Honda knowingly, affirmatively, and actively misrepresents and omits the true character, quality, and nature of the Class Vehicles' shifters.  The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class and Subclass Members. Plaintiff and Class and Florida Subclass Members reasonably relied upon Honda's knowing and/or active omissions. Based on the foregoing, Honda is estopped from relying upon any statutes of limitation in defense of this action.

57.     *Equitable Tolling*. Honda took active steps to omit the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Class Vehicles with the Rollaway Defect. The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of the Plaintiff and Class and Florida Subclass Members. When Plaintiff learned about this material information, he exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing his claims. Honda wrongfully omitted its deceitful acts described above. Should it be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

**FIRST CLAIM FOR RELIEF**
**Breach of Express Warranty**
**(On behalf of the National Class)**

58.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

59.     Plaintiff brings this claim individually and on behalf of the National Class, or, in the alternative, on behalf of the Florida Subclass against Honda.

60.     Honda expressly warranted that it would cover the cost of all parts and labor to repair any item on the vehicle when it left the manufacturing plant that is defective in material or workmanship.

61.     Further, Honda advertised the Class vehicles as "safe" and "reliable" while failing to disclose to Plaintiff and Class Members any hint of the risks posed by the Rollaway Defect, which renders the Class vehicles dangerous and unreliable.

62.     Honda materially breached its expressed warranties by selling and leasing Class Vehicles that contained the Rollaway Defect, which rendered the Class vehicles unsafe or unfit for use as warranted. Thus, at the point of sale, the written warranties were breached by Honda as the Class Vehicles were unreasonably dangerous and contained an inherent design defect.

63.     Honda breached the express warranty because it did not promptly replace or buy back the Class Vehicles of Plaintiff and the other Class Members.

64.     Honda was put on notice of the breach by Class member's online complaints available on NHSTA, and other online public websites. In addition to Plaintiff's visit to a Honda dealership concerning the issues described throughout *infra*.

65.     In addition, Honda's express warranty has failed its essential purpose due to the Rollaway defect not being covered under either the Powertrain or Limited warranties that accompanied each Class Vehicle. Specifically, the Electric Parking Break and any update to the Vehicle Stability Assistance software within the Class Vehicles are not covered by either the Powertrain or Limited warranties.

66.     As a result of Honda's breach of its express warranties, Plaintiff and the other Class Members received goods in a dangerous condition that substantially impairs their value to Plaintiff and the other Class Members. Plaintiff and the other Class Members have been damages as a result of the diminished value of the Class Vehicles and the inability to safely use their Class Vehicles.

67.     Plaintiff and Class Members are entitled to recover all damages as a result of said breach of warranties in an amount in excess of $5,000,000.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Warranties**
**(On behalf of the National Class)**

68.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

69.     Plaintiff brings this claim individually and on behalf of the National Class, or, in the alternative, on behalf of the Florida Subclass against Honda.

70.     Honda is a manufacturer and seller, as it designed, assembled, fabricated, produced, constructed, and prepared the Class Vehicles before they were sold or leased.  Honda is a seller because it was a manufacturer, wholesaler, and distributor engaged in the business of selling a product for resale, lease, or use, with actual knowledge of the Rollaway Defect.

71.     Honda impliedly warranted that the Class Vehicles, which it designed, manufactured, and sold or leased to Plaintiff and Class Members, were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and equipped with adequate safety warnings.

72.     Honda did not effectively disclaim these implied warranties.

73.     The Class Vehicles sold by Honda were defective at the time of their sale or lease. Honda breached its implied warranty of merchantability, in that, among other things, the goods were not safe, merchantable, and reasonably suited for the ordinary purposes for which they were sold or leased.

74.    Honda, through its agent dealership, leased a Class Vehicle to Plaintiff.

75.    Plaintiff was a person whom Honda reasonably might have expected to purchase or lease, and use a Class Vehicle.

76.    Plaintiff relied upon Honda's implied warranties that the Class Vehicle he leased was of merchantable quality and fit for its intended purposes.  The Rollaway Defect rendered it unreasonably dangerous and caused his vehicle to fail to move into park and fail to provide a positive indication to them that it has not been properly been placed in park.

77.    Honda placed the Class Vehicles in the stream of commerce and expected them to reach consumers without substantial change in the condition in which they were sold or leased. Indeed, a Class Vehicle reached Plaintiff—someone who would reasonably be expected to use, consume, or be affected by the performance of a Class Vehicle—without substantial change in the condition in which it was sold or leased.

78.    The Class Vehicles are defective, and their Rollaway Defect is outlined throughout this Complaint.  Generally, their design includes a dangerous, defective shifter system.  Despite knowledge of the Rollaway Defect, Honda failed to warn consumers about the defect.

79.    In situations such as Plaintiff's—where the driver used the Class Vehicle as intended and in a foreseeable and reasonable manner—the vehicle should not fail.

80.    Nevertheless, Plaintiff's Class Vehicle failed, and it did so because of the Rollaway Defect that existed in the Class Vehicle at the time it left the manufacturer's control.

81.    Honda knew or should have known of the defective design of the Class Vehicles and that, as a result, they were unreasonably dangerous.

82.    Honda did not warn or alert purchasers or users of the foregoing dangers, despite knowledge of them.

83.    As a direct and proximate result of the Rollaway Defect in the Class Vehicle's design and manufacture and Honda's failures to warn, Plaintiff have sustained injuries, damages, and loss.

84.     Honda is liable to Plaintiff and Class Members for damages caused by the above defects and inadequacies in the design and manufacture of the Class Vehicles.

**THIRD CLAIM FOR RELIEF**
**Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301, *et seq*.**
**(On behalf of the National Class)**

85.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

86.     Plaintiff brings this claim individually and on behalf of the National Class against Honda.

87.     Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

88.     Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

89.     The Class Vehicles at issue are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

90.     Honda's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

91.     Honda breached these warranties as described in more detail above. Without limitation, the Class Vehicles fail to notify the driver when the vehicle is not properly in park, and fail to activate the Electric Parking Brake to prevent the vehicle from rolling away if the vehicle is not fully placed in park. The Class Vehicles share a common design defect in that the Class vehicles fail to operate as represented by Honda, specifically, that they are safe for ordinary use.

92.     Plaintiff and Class Members have had sufficient direct dealings with Honda or its agents (dealerships or corporate representatives) to establish privity of contract between Honda, on one hand, and Plaintiff and each of the other Class Members on the other hand. Nonetheless,

privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Honda and its dealers and, specifically, of Honda's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

93.     Affording Honda a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, Plaintiff and many others already alerted Honda of the defect, and Honda has failed to cure the Rollaway Defect. At the time of sale or lease of each Class Vehicle, Honda knew, or should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicle's inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Honda a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

94.     Honda has breached and continues to breach its written and implied warranties of future performance, thereby damaging Plaintiff and Class Members, because the Class Vehicles fail to perform as represented due to the undisclosed Rollaway Defect.  Honda failed to fully cover or pay for necessary inspections, repairs and/or vehicle replacements for Plaintiff and the Class.

95.     Honda is under a continuing duty to inform its customers of the nature and existence of potential safety related defects in the Class Vehicles.

96.     Such irreparable harm includes, but is not limited to, likely injuries and crashes as a result of the Rollaway Defect in the Class Vehicles.

97.     Plaintiff and the Class seek full compensatory damages allowable by law, the diminished value of the Class Vehicles, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and punitive damages, and appropriate equitable

relief including injunctive relief, restitution, a declaratory judgment, a court order enjoining Honda's wrongful acts and practices, and any other relief to which Plaintiff and the Class may be entitled, including attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Violation of Florida's Unfair & Deceptive Trade Practices Act,**
**Fla. Stat. § 501.201,** *et seq.*
**(On behalf of the Florida Subclass)**

98.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

99.     Plaintiff brings this action on behalf of himself and the Florida Subclass against all Defendants.

100.     Plaintiff and the Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

101.     Honda engaged in "trade" or "commerce" within the meaning of Fla. Stat. § 501.203(8).

102.     The Florida Unfair and Deceptive Trade Practices Act ("FUDTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . ." Fla. Stat. § 501.204(1). In the course of their business, Honda, through their agents, employees, and/or subsidiaries, violated the FUDTPA as detailed above. Specifically, in manufacturing, selling, and designing the Class Vehicles, and in marketing, offering for sale, and selling the defective Class Vehicles, Defendants engaged in unfair or deceptive acts or practices prohibited by Fla. Stat. § 501.204(1), including, but not limited to:

a.     causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

b.     representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

21

c.  representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

d.  advertising the Class Vehicles with the intent not to sell or lease them as advertised;

e.  engaging in other conduct which created a likelihood of confusion or of misunderstanding; and

f.  using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale or lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

103.  Honda's scheme and concealment of the true characteristics of the Rollaway Defect were material to Plaintiff and the Class, as Honda intended. Had they known the truth, Plaintiff and the Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

104.  Plaintiff and Class members had no way of discerning that Honda's representations were false and misleading, or otherwise learning the facts that Honda had concealed or failed to disclose, because Honda had exclusive knowledge of the information surrounding the Rollaway Defect and did not alert Plaintiff and Class Members to said information prior to their purchase of their Class Vehicles. Plaintiff and Class members did not, and could not, unravel Honda's deception on their own.

105.  Honda had an ongoing duty to Plaintiff and the Class to refrain from unfair and deceptive practices under the FUDTPA in the course of their business. Specifically, Honda owed Plaintiff and the Class Members a duty to disclose all the material facts concerning the Rollaway Defect because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff

and the Class Members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

106.    Plaintiff and Class members suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealment, misrepresentations, and/or failure to disclose material information.

107.    Honda's violations present a continuing risk to Plaintiff and the Class, as well as to the general public. Honda's unlawful acts and practices complained of herein affect the public interest.

108.    Pursuant to Fla. Stat. §§ 501.2105(1)-(2), Plaintiff and the Class Members seek an order enjoining Honda's unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the FUDTPA.

## FIFTH CLAIM FOR RELIEF
### Equitable Injunctive Relief and Declaratory Relief
### (On behalf of the National Class)

109.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

110.    Plaintiff brings this claim individually and on behalf of the Class against Honda.

111.    Honda is under a continuing duty to inform its customers of the nature and existence of potential defects in the vehicles it sells.

112.    Honda acted uniformly towards Plaintiff and the Class Members by refusing to adequately warn about the dangers of the Rollaway Defect or offer a permanent repair of the defect.

113.    Plaintiff, Members of the Class, and the public will suffer irreparable harm if Honda is not ordered to properly repair all of the Class Vehicles immediately, offer rescission to the Class by repurchasing their Class Vehicles for their full cost and reimbursing the lessees of the Class Vehicles the monies they have paid toward their leases, recalling all Class Vehicles with the Rollaway Defect, and ceasing and desisting from marketing, advertising, selling, and leasing

the Class Vehicles.

114.    Such irreparable harm includes, but is not limited to, likely injuries as a result of the Rollaway Defect in the Class Vehicles.

115.    Plaintiff and the Class seek appropriate equitable relief, including injunctive relief, a declaratory judgment, a court order enjoining Honda's wrongful acts and practices, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and any other relief to which they may be entitled.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff Patrick Rojas individually and on behalf of all others similarly situated, requests the Court enter judgment against Honda, and accordingly requests the following:

A.    An order certifying the proposed Class and Florida SubClass and designating Plaintiff as named representative of the Classes and designating the undersigned as Class Counsel;

B.    A declaration that Honda is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

C.    A declaration that both the Basic Limited and Powertrain Limited Warranties fail their essential purpose;

D.    An order enjoining Honda from further deceptive distribution, sales, and lease practices with respect to their Class Vehicles; to repair all other damages to the Class Vehicles caused by the Defect;

E.    A further order enjoining Honda from the conduct alleged herein, including an order enjoining Honda from concealing the existence of the Defect during distribution, sales, and advertisements, as well as during customer and warranty service visits for the Class Vehicles;

F.    An award to Plaintiff and Class Members of compensatory, actual, exemplary, and

statutory damages, including interest, in an amount to be proven at trial;

G.  A declaration that Honda must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits it received from the sale or lease of their Class Vehicles, or make full restitution to Plaintiff and Class Members;

H.  An award of attorneys' fees and costs pursuant to applicable laws;

I.  An award of pre-judgment and post-judgment interest, as provided by law;

J.  Any and all remedies provided pursuant to Fla. Stat. §§ 501.2105(1)-(2)

K.  Leave to amend the Complaint to conform to the evidence produced at trial;

L.  An order enjoining Honda to repair or replace the transmissions in the Class Vehicles; and

M.  Awarding such other relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a trial by jury as to all matters so triable.

Respectfully submitted,

Dated: May 1, 2019           By:    s/Rachel Soffin
                                    Rachel Soffin, FL Bar No. 0018054
                                    GREG COLEMAN LAW PC
                                    800 S. Gay Street, Suite 1100
                                    Knoxville, TN 37929
                                    Telephone: 865-247-0080
                                    Facsimile: 865-522-0049
                                    rachel@gregcolemanlaw.com

                                    Scott C. Harris, FL Bar No. 103905
                                    WHITFIELD BRYSON & MASON LLP
                                    900 W. Morgan St.
                                    Raleigh, NC 27603
                                    Telephone: 919-600-5000
                                    Facsimile: 919-600-5035
                                    scott@wbmllp.com

Bradley K. King*
AHDOOT & WOLFSON, PC
45 Main Street, Suite 528
Brooklyn, New York 11201
Telephone: (917) 336-0171
Facsimile: (917) 336-0177
bking@ahdootwolfson.com

* *pro hac vice* to be filed

*Counsel for Plaintiff*